**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
**SEARS, ROEBUCK AND CO.,** *et al.,*      )
                                                    )
             **Plaintiffs,**                        )
                                                    )
       **v.**                                       )        **Civil Action No. 14-1031 (RMC)**
                                                    )
**U.S. POSTAL SERVICE,**                     )
                                                    )
             **Defendant.**                         )
_____     )

**OPINION**

This is a case about an extra dab of glue—just an extra bit of stickum worth over $1.25 million.  Sears, Roebuck and Co.; Segerdahl Graphics, Inc.; and Aspen Marketing Services, LLC (collectively, Plaintiffs) mailed rectangular folded self-mailers in three separate mailings in 2009.  To qualify for the most discounted automation rate, U.S. Postal Service rules required self-mailers to be sealed on the top and bottom with glue or adhesive tabs.  Because Plaintiffs' mailpieces were not sealed on the top and bottom, the U.S. Postal Service's Pricing Classification Service Center disqualified the mailings from the lower rate and assessed deficiencies totaling over $1.25 million.

Plaintiffs challenge the Pricing Center's decisions as unreasonable, *ultra vires*, and in violation of due process, and have moved for summary judgment.  The Postal Service filed a Counterclaim for judgment on the asserted deficiencies; it filed a cross motion to dismiss in part and for summary judgment on the remainder.[1]  Plaintiffs failed to follow the rules

_____
[1] *See* Pl. Mot. for Summ. J. [Dkt. 21]; Def. Mot. for Summ. J. [Dkt. 27]; Pl. Reply [Dkt. 30]; Def. Reply [Dkt. 36].  After filing appendices, *see* Joint Appendix (JA) [Dkt. 39]; Def. Supplemental Appendix (DS) [Dkt. 38]; Pl. Supplemental Appendix (PS) [Dkt. 40]; Pl. Supplement to the Supplemental Appendix [Dkt. 51], the parties refiled their briefs to include citations to the appendices.  *See* Pl. Mot. for Summ. J. [Dkt. 47] (MSJ); Def. Mot. for Summ. J.

applicable at the time to their mailings and now they want to avoid paying the postage due. Because their mailpieces did not comply with the regulations specifying the type of mail entitled to the most-discounted rate and the deficiency assessments were proper, judgment will be entered in favor of the Postal Service.

## I.  FACTS

### A.  Postal Service Regulations for Automated Mail

The U.S. Postal Service is an independent establishment of the Executive Branch, *see* 39 U.S.C. § 201, that provides mail services at uniform rates throughout the country.  39 U.S.C. §§ 101, 403.  The Postal Service is empowered to adopt rules and regulations in furtherance of its functions.  *Id.* § 401(2).

In the early 1980s, the Postal Service began to purchase and deploy equipment for the automated processing of mail.  Compilation of Directory of Firms, 48 Fed. Reg. 28377-01, 28377 (June 21, 1983) (citing Omnibus Budget Reconciliation Act of 1981, Pub. L. No. 97-35). The Postal Service started automated mail processing in 1983, and the processing machines became more sophisticated over time.  Eligibility Requirements for Automated Rate Categories, 55 Fed. Reg. 40560, 40560 (Oct. 3, 1990).  The Postal Service realized by 1990 that it had presumed erroneously that all mail would be sent inside an envelope when it created standards for mail eligible to receive an automation discount; it had failed to consider the problems presented by automated processing of "non-enveloped mail," that is "folded self-mailers" prepared from a single piece of folded cardstock.  *Id.* at 40561.  As a result, the Postal Service

---

[Dkt. 44]; Pl. Reply [Dkt. 49]; Def. Reply [Dkt. 45].  For ease of reference, this Opinion cites the refiled briefs.

established standards for the construction of folded self-mailers to ensure successful automated processing. *Id.*

Typically, a folded self-mailer is formed from a single sheet of cardstock that is folded once on the right side (the leading edge), addressed on the front, and sealed to make a letter-sized mailpiece. Such a self-mailer is designed to be mailed without needing to be enclosed in an envelope. DMM §§ 201.3.1, 201.3.14.1, at DS11-15; *see also* Folded Self-Mailers & Unenveloped Mailpieces, 76 Fed. Reg. 74704, 74706 (Dec. 1, 2011), at PS1724-1728.

The Domestic Mail Manual (DMM or Manual) is a Postal Service regulation that sets forth mailing standards. *See* 39 C.F.R. §§ 111.1, 211.2(a)(2). The Manual establishes rules and requirements governing the products and services described in the Mail Classification Schedule. The Schedule, in turn, lists and describes the Postal Service's products and services and its rates. *See* 39 C.F.R. §§ 3020.10, 3020.13 (describing the Mail Classification Schedule). The Postal Service charges a lower rate for mail that can be processed on high-speed sorting machines and more for mail processed by hand or in other ways. DMM Notice 123 Price List at 11 (May 2009), at DS19.

To qualify for the low automation rate, mailpieces must comply with the physical requirements set forth in the Manual. DMM § 201.3.0, at DS11; *cf.* DMM § 201.2.1 (non-machinable letters are those that do not meet the requirements of DMM § 201.3.0), at DS10. The sealing requirements for folded self-mailers designed with a final fold on the right—the requirements in effect at the time Plaintiffs sent the self-mailers at issue here—are as follows:

> In specifically identified formats, a self-mailer may have the final fold on the right side (leading edge) of the piece. The left edge (trailing edge) and other open edges must be secured with at least one tab or a glue line. The number of tabs required is determined by the final trim size and paper basis weight of the piece. If the piece is 7 inches long or more, the piece must be sealed on the top and

> the bottom.  In all cases, additional tabs, seals, or glue spots or glue lines may be used.  Newsprint paper is acceptable if the basis weight of the paper meets the minimum standards in 3.14.1a and the piece is certified by the USPS mailpiece design analyst to be acceptable for automated processing.

DMM § 201.3.14.1c (May 11, 2009), at DS15.[2]  Thus, as critically relevant to the Plaintiffs' mailings—oblong folded pieces 7 inches long or more with a final fold on the right had to be "sealed on the top and the bottom."

The Postal Service also published a Quick Service Guide 201b, which included illustrations of the allowed designs and sealing requirements for folded self-mailers.  *See* Guide 201b (May 11, 2009), at PS233-34.  The illustration of the design permitted for mailers governed by DMM § 201.3.14.1c, that is, with the final fold on the right side of the rectangular mailpiece, shows tabs in the center of the trailing (left) edge, the center of the top, and the center of the bottom.  *Id.* (placement of tabs and wafer seals), at PS234 (see attached Appendix, p. 1).  Guide 201b noted that "as an alternative to tabs or wafer seals, the open edge of the length of the mailpiece may be continuously glued or spot glued."  *Id.*, at PS233.

The reason for sealing self-mailers with tabs or glue is to "prevent the open edges from fanning out and jamming high-speed processing equipment."  Folded Self-Mailers— Additional Options, Postal Bulletin (June 5, 1997), at DS21; *see also* Eligibility Requirements for Automated Rate Categories, 55 Fed. Reg. 40560, 40561 (Oct. 3, 1990) ("Self-mailers . . . that are open on three sides cannot be successfully processed on the current automation equipment.").

---

[2] The sections of the Manual cited in this Opinion are from the May 11, 2009 publication, unless noted otherwise.  The prior version of the Manual was published on May 12, 2008.  These are the regulations that were in effect at the time of Plaintiffs' three mailings at issue in this case.  The only notable difference between the 2009 and 2008 versions was that DMM § 201.3.14 was numbered § 201.3.13 until August 14, 2008.  *See* Postal Bulletin 22239 (Aug. 14, 2008), at DS 26.

The problem of unenveloped mail getting caught in the machines remained a Postal Service concern in December 2008 and May 2009—contemporaneously with the mailings at issue in this case that were sent in April, August, and December of 2009. *See* New Standards for Letter-Size Booklets and Folded Self-Mailers, 73 Fed. Reg. 79430 (Dec. 29, 2008), at PS1705 (self-mailers "tend to double feed and jam resulting in damage to the equipment and the mail"; if they jam they must be processed manually or on flat sorting equipment, which is more labor intensive); Guide 201b (May 11, 2009), at PS233 ("Unenveloped letter-sized mailpieces prepared for automation mailings must be secured (tabbed) to prevent an open edge from jamming high-speed processing equipment.").

Postal customers are required to comply with postal standards. DMM § 607.1.1, at PS124. When mailings are submitted with a postage statement, the mailer's signature certifies compliance with all applicable standards. *Id.* The Postal Service may demand proper payment even after acceptance of the mail. DMM § 607.1.2, at PS124. Postal customers who fail to meet postal standards for the rates they claim have underpaid postage. *See* DMM § 604.10.1 (a "revenue deficiency" is "a shortage or underpayment of postage or fees"), at PS122. The Postal Service may assess a revenue deficiency against an underpaying customer.

### B. Revenue Deficiency Assessed for Plaintiffs' Three Mailings

The first self-mailer at issue was mailed for Sears, Roebuck and Co. in April 2009 to promote "Sears Days," a nationwide retail sale. The piece was a bi-fold design, printed by Specialty Print Communications who subcontracted with another printer, Team Services, for sorting and mailing. Team Services mailed over 5.8 million Sears Days self-mailers at the discounted automation rate on an account charged to Sears. The second contested mailpiece was also an advertisement for Sears, a bi-fold piece promoting a "Baby Event," that was designed and printed by Segerdahl Graphics, Inc., (Segerdahl) a graphic design, printing, and mail

preparation company.  In August 2009, Segerdahl mailed over 500,000 Baby Event mailers at the discounted automation rate.  The third self-mailer was a tri-fold design promoting a "Buick Holiday Event" for a group of General Motors dealers in the Chicago area.  The Holiday Event advertisement was designed by Aspen Marketing Services, LLC, (Aspen) a marketing company; Segerdahl printed and mailed over 1.9 million of these advertisements in December 2009.  *See* Appendix, p. 2 (line drawings of Plaintiffs' mailers, as depicted in Pl. Mot. for Summ. J. [Dkt. 47] at 10-12).

In each instance the self-mailers were governed by § 201.3.14.1c of the Manual, as the final fold was on the right edge and they were more than 7 inches long.  Plaintiffs' self-mailers were sealed with two glue lines or elongated glue spots along the trailing edge, within one inch from the top and bottom edges.  *See* Compl. [Dkt. 1] ¶¶ 32-34.  To be eligible for the low automation rate under § 201.3.14.1c, the self-mailers had to be "sealed on the top and the bottom."  The Postal Service determined that they were not so sealed and assessed deficiencies.  Plaintiffs appealed to the USPS Pricing Classification Service Center (Pricing Center), and the Pricing Center issued final agency decisions affirming the deficiency assessments.  Regarding the Sears Days mailer, the Pricing Center found that the mailpieces did not meet the requirements for automated processing because the top and bottom edges were not sealed:

> The standards provide that the trailing edge and other open edges must be secured, which must include the top and bottom edges if the mailpiece is over 7 inches in length.  While the mailpiece in question was secured by a glue line within one inch of the top edge and another within one inch of the bottom edge, the placement of the glue lines near the trailing edge did not serve to secure the top and bottom open edges.

Sears Days Final Agency Decision, at JA2.  The Pricing Center determined that a deficiency of $1,033,597.19 was due, *id.* at JA3, and the Postal Service certified that the debt was due and owing by Sears on March 14, 2012, at DS1-2.  As to the Baby Event mailing, the Pricing Center

similarly affirmed the deficiency assessment, noting that "[w]hile the mailpiece in question was secured by a glue line within one inch of the top edge and another within one inch of the bottom edge [on the trailing edge], the placement of the glue lines near the trailing edge did not serve to secure the top and the bottom open edges." Baby Event Final Agency Decision, at JA126. A deficiency of $94,978.27 was assessed, *id.* at JA127, and the Postal Service certified that the debt was due and owing, jointly and severally, by Sears and Segerdahl on March 16, 2012, at DS3-4. Similarly, with regard to the Buick Holiday Event self-mailers, the Pricing Center decided:

> You state that your mailpiece met the DMM requirements for folded self-mailers with a final fold on the leading edge, because DMM language is not clear in specifying the number of tabs, seals, glue lines required. In addition, you state that the glue line on the entire trailing edge ultimately satisfy's (sic) the requirements for sealing the left, top and bottom edges. Your agent, Mike Buttita of Segerdahl Graphics, however, in a January 12, 210 email to Postal Inspector Palmeri acknowledged that the tabbing on a similar piece, sealed the same way, was incorrect.

Buick Holiday Event Final Agency Decision, JA166.[3] A deficiency of $125,367.01 was assessed, *id.* at JA167, and the Postal Service certified that the debt was due and owing by Aspen on March 16, 2012, at DS5-6. The assessments together total over $1.25 million.

Plaintiffs filed a five-count Complaint, four of which remain pending:[4]

---

[3] Plaintiffs' motion for summary judgment includes line drawings of the three mailers. *See* Mot. for Summ. J. [Dkt. 47] (MSJ) at 10-12. In addition, Plaintiffs provided samples of the three mailpieces to the Court. While the record is limited to the facts before the agency and is not supplemented by the Court's inspection of the three mailpieces, *see James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996) (district courts should not duplicate agency fact finding efforts); *Camp v Pitts*, 411 U.S. 138, 142 (1973) (focal point for judicial review should the administrative record already in existence), the ability to view the mailpieces in three dimensions enabled the Court to confirm the accuracy of the written descriptions and the two-dimensional line drawings.

[4] Count III involved allegations regarding a fourth mailing, but the Postal Service rescinded its decision on this mailing after the Complaint was filed and Plaintiffs "do not seek further relief

Count I alleges that the deficiency assessments were inconsistent with the regulations and thus contrary to law;

Count II alleges that the Postal Service violated the notice requirement of the Fifth Amendment due process clause when it "retroactively reinterpreted" the regulations regarding sealing of self-mailers;

Count IV alleges that the deficiency assessments are unjust, unreasonable, and *ultra vires* because they are unrelated to any actual damage suffered by the Postal Service, and thus the assessments violate  39 U.S.C. §§ 404(b) (postal rates must be reasonable and equitable), 3622(b)(8) (postal rates and classifications must be just and reasonable), and 3622(c)(5) (postal rates should take into account the degree of preparation of mail for delivery into the postal system performed by the mailer and its effect upon reducing costs to the Postal Service); and

Count V alleges that the Postal Service violated the due process clause of the Fifth Amendment because the assessments exceeded the Postal Service's actual costs resulting from non-compliance.

Compl. ¶¶ 69-75 (Count I), 76-77 (Count II), 84-93 (Count IV), 94-95 (Count V).  The Postal

Service filed a five-count Counterclaim:

Counterclaim Count I seeks judgment on a debt under the Federal Debt Collection Practices Act, 28 U.S.C. §§ 3001 *et seq.* (FDCPA), against Sears asserting that it is liable for the deficiency for the Sears Days mailing in the amount of $1,033,597.19 and asserting that it is jointly and severally liable (with Segerdahl) for the deficiency for the Baby Event mailing in the amount of $94,978.27;

Counterclaim Count II seeks judgment on a debt under the FDCPA, against Segerdahl, asserting that it is jointly and severally liable (with Sears) for the deficiency for the Baby Event mailing in the amount of $94,978.27;

Counterclaim Count III seeks judgment on a debt under the FDCPA, against Aspen, asserting that it is liable for the deficiency for the Buick Holiday Event mailing in the amount of $125,367.01;

---

from the Court for this mailing."  MSJ at n.1.  Accordingly, Count III of the Complaint will be dismissed as moot.

Counterclaim Count IV alleges unjust enrichment in that Sears, Segerdahl, and Aspen were unjustly enriched when they paid less for the mailings than was due and owing; and

Counterclaim Count V alleges that the Postal Service is entitled to declaratory judgment, under the Declaratory Judgment Act, 28 U.S.C. § 2201, that Sears, Segerdahl, and Aspen owe the sums assessed.

Counterclaim [Dkt. 14-1] ¶¶ 56-61 (Count I), 62-67 (Count II), 68-73 (Count III), 74-79 (Count IV), 80-83 (Count V).  Plaintiffs move for summary judgment.  The Postal Service moves for dismissal of Count IV for lack of jurisdiction, judgment on the pleadings as to Count V, and summary judgment as to other Counts of the Complaint and Counterclaim.

## II. STANDARDS OF REVIEW AND ANALYSIS

### A.  Count I—Challenge to Deficiency Assessments As Contrary to Law

Plaintiffs complain in Count I that the deficiency assessments were illegal and unenforceable because they were inconsistent with the regulation.  This claim presents a question of law that must be resolved on the administrative record and is properly resolved via summary judgment.  *See Am. Bioscience Inc. v. Thompson*, 269 F.3d 1077, 1083-84 (D.C. Cir. 2001).  However, Federal Rule of Civil Procedure 56 does not apply, *see Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006), as the district court sits as an appellate tribunal when reviewing the underlying agency decision, *see Am. Bioscience*, 269 F.3d at 1084; *Baltimore v. Clinton*, 900 F. Supp. 2d 21, 25 (D.D.C. 2012).

### 1.  Non-APA, Reasoned Decision-Making Standard

While the Postal Service is a government agency, *see* 39 U.S.C. §§ 201 & 409, and final decisions by government agencies are usually subject to review under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 *et seq*., the actions of the Postal Service are exempt from APA review.  *See* 39 U.S.C. § 410(a) (no federal law, expressly including the

APA, shall apply to the Postal Service's exercise of power); *Carlin v. McKean*, 823 F.2d 620, 622 (D.C. Cir. 1987) ("Apart from two very limited exceptions [which do not apply here], the APA is not applicable to the exercise of the powers or the Postal Service.").

   The substance of Postal Service regulations, policies, and procedures is not subject to judicial review, *see Reese Bros., Inc. v. U.S. Postal Service*, 905 F. Supp. 2d 223, 253 (D.D.C. 2012), but the Postal Service's *application* of its own regulations and its deficiency assessments are subject to limited judicial review, *id*. at 253-55.  Such non-APA review concerns whether the Postal Service "engaged in reasoned decision-making."  *Id*. at 254 (applying *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970) (setting forth "reasoned decision-making" as the standard for non-APA review applicable to the Federal Communications Commission).  An agency has engaged in reasoned decision-making if it has "given reasoned consideration to all the material facts and issues."  *Greater Boston*, 444 F.2d at 851.  This standard of review is "extremely limited," as there is a "strong presumption" in favor of the Postal Service.  *Reese*, 905 F. Supp. 2d at 255 (quoting *Sierra Club v. U.S. Postal Service*, 549 F.2d 1199, 1201 (9th Cir. 1976)).  The Postal Service's decision on a mailing rate classification should be overturned only when "clearly wrong."  *Id*.

   Further, deference is due to an agency's interpretation of its own regulation, unless it is "plainly erroneous or inconsistent with the regulation."  *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (quoting *Bowles v. Seminole Rock & Sand Co*., 325 U.S. 410, 414 (1945)).[5] Deference to an agency's interpretation of its own regulation is particularly called for when the

---

[5] Plaintiffs speculate that *Auer* and *Seminole Rock* might one day be overturned by the Supreme Court as an unconstitutional transfer of power to the Executive Branch.  *See* Pl. Reply at 7 n.2. *Auer*, however, remains binding precedent.  *See Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 208 (2011) (citing *Auer* with approval).

regulation concerns a highly technical or complex area and the agency has unique expertise.  *See NLRB v. U.S. Postal Service*, 827 F.2d 548, 551 (9th Cir. 1987) (courts defer to agency interpretations in areas where the agency has expertise and experience with the subject matter); *see also Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 151 (1991) ("Because applying an agency's regulation to complex or changing circumstances calls upon the agency's unique expertise and policymaking prerogatives, we presume that the power authoritatively to interpret its own regulations is a component of the agency's delegated lawmaking powers.").

In an attempt to avoid the deferential scope of review applicable here, Plaintiffs advance numerous arguments, which the Court finds unavailing.  First, Plaintiffs contend that the limited "reasoned decision-making" standard of review only applies to an agency's fact finding, not to interpretation of its own regulations.  *Greater Boston* and *Reece*, however, did not recognize such a distinction.  *See Greater Boston*, 444 F.2d at 851 ("The function of the court is to assure that the agency has given reasoned consideration to all the material facts and issues."); *Reese*, 905 F. Supp. 2d at 255 ("even upon mixed questions of law and fact, or of law alone," decisions by the Postal Service carry a strong presumption of correctness) (quoting *Bates & Guild Co. v. Payne*, 194 U.S. 106, 109-110 (1904)).

Second, Plaintiffs erroneously argue that ambiguities in postal rates should be construed against the Postal Service, relying on cases holding that a tariff should be construed strictly against the railroad or common carrier that drafted the tariff.  *See, e.g.*, *Durbin Paper Stock Co. v. ICC*, 585 F.2d 543, 545 (D.C. Cir. 1978); *Penn Cent. Co. v. Gen. Mills, Inc.*, 439 F.2d 1338, 1341 (8th Cir. 1971).  Cases involving tariffs imposed by common carriers are inapposite, as Count I involves a challenge to the DMM regulations that interpret rates and

classifications, not to the rates themselves, which are set by the Postal Regulatory Commission. *Compare* 39 C.F.R. § 3020.13 (Postal Regulatory Commission regulates and maintains postal tariffs through the Mail Classification Schedule) *with Nat'l Retired Teachers Ass'n v. U.S. Postal Service*, 593 F.2d 1360, 1363 (D.C. Cir. 1979) (Postal Service interprets classifications when implementing them through the DMM).

Third, Plaintiffs aver that no deference is due to the Postal Service's interpretation of its own regulation under *Auer/Seminole Rock* because the Postal Service is a regulated monopoly, not an agency. To the contrary, this Court is bound by statute and Supreme Court precedent holding that the Postal Service is an agency, an independent establishment of the Executive Branch that is part of the U.S. Government. *See* 39 U.S.C. § 201; *U.S. Postal Service v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 744 (2004).

Finally, Plaintiffs insist that *Auer/Seminole Rock* deference to an agency's interpretation of a regulation is only required where the regulation in question is ambiguous, and that deference is not required where the regulation is merely "permissive" because deference to the agency's interpretation would permit the agency to *de facto* create a new regulation. Pl. Reply at 7 (citing *Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000)). *Christensen* is not analogous to this case, as the regulation at issue in that case was distinctly permissive, *see* 529 U.S. at 588 ("[n]othing in the regulation even arguably requires than an employer's compelled use policy must be included in an agreement"), while the regulation in question, DMM § 201.3.14.1c, is expressly mandatory—self-mailers longer than 7 inches "must" be sealed on the top and bottom.

The deferential standard of review that imposes a "strong presumption" in favor of the Postal Service applies here. Further as explained below, the Court will give deference to

the Pricing Center's interpretation of its own regulation, as the interpretation is not plainly wrong or inconsistent with the regulation.

### 2. The Postal Service Engaged in Reasonable Decision-Making

The folded self-mailers at issue here were governed by § 201.3.14.1c of the Manual, as the final fold was on the right edge and they were more than 7 inches long.  Thus, to receive the advantage of the low automation rate, the self-mailers had to be sealed at the trailing edge (left) and "sealed on the top and the bottom."  The Pricing Center determined that they were not.

Plaintiffs maintain that the self-mailers were fixed at the corners—on the right side due to the fold and on the left side due to the glue lines along the trailing edge and within one inch of the top and bottom edges.  Because the regulation does not indicate precisely *where* on the top and bottom edge the mailers must be sealed, Plaintiffs insist that sealing the mailers on the corners was sufficient and the deficiency assessments were contrary to law.

To analyze whether the Pricing Center engaged in "reasoned decision-making," the Court looks to the language of the regulation and its purpose.  *See Trinity Broad. of Florida, Inc. v. FCC*, 211 F.3d 618, 625 (D.C. Cir. 2000) (regulations must be interpreted according to their plain language and purpose).  DMM § 201.3.14.1c provides in its entirety:

> In specifically identified formats, a self-mailer may have the final fold on the right side (leading edge) of the piece.  *The left edge (trailing edge) and other open edges must be secured with at least one tab or a glue line.*  The number of tabs required is determined by the final trim size and paper basis weight of the piece.  *If the piece is 7 inches long or more, the piece must be sealed on the top and the bottom.*  In all cases, additional tabs, seals, or glue spots or glue lines may be used.  Newsprint paper is acceptable if the basis weight of the paper meets the minimum standards in 3.14.1a and the piece is certified by the USPS mailpiece design analyst to be acceptable for automated processing.

DMM § 201.3.14.1c (emphasis added), at DS15.  The purpose of the regulation was to require unenveloped mail to be properly sealed to prevent it from fanning out and causing equipment blockage.  *See, e.g.*, 73 Fed. Reg. 79430 (Dec. 29, 2008), at PS1705 (self-mailers tend to jam); Guide 201b (May 11, 2009), at PS233 (unenveloped mailpieces must be secured to prevent an open edge from jamming equipment).

Plaintiffs' assertion that sealing the corners satisfied the regulation is based on a partial reading of the regulation.  However, a regulation, like a statute, should be construed so that effect is given to all of its provisions and no part is rendered superfluous, *see Hibbs v. Winn*, 542 U.S. 88, 101 (2004), and to avoid redundancy, *see Parker v. Califano*, 561 F.2d 320, 325 (D.C. Cir. 1977).  The italicized portion of the regulation requires that the trailing edge of the folded self-mailer must be "secured with at least one tab or a glue line."  In addition, for self-mailers 7 inches or more, the regulation *also* requires mailers to be "sealed on the top and the bottom."  Plaintiffs' glue along the trailing edge of their self-mailers satisfied the first requirement of the regulation, but not the second.  If glue at the trailing edge were sufficient, as Plaintiffs argue, the second requirement for sealing self-mailers 7 inches or longer "on the top and bottom" would be surplusage.  The Pricing Center engaged in reasoned decision-making when it determined that glue on the trailing edge did not satisfy the additional requirement spelled out in the regulation, *i.e.*, that the mailers be sealed on the top and the bottom.

Plaintiffs mischaracterize the Pricing Center's interpretation of the regulation, complaining that the Pricing Center required a tab or glue spot at the "midpoint" of the top and bottom edges, *see* Pl. Reply at 1-2, 8-10, and that the Pricing Center required a glue spot or line that "literally touches the top edge with no clearance allowed," *id*. at 2, 10.  The Pricing Center did not impose such requirements.  It found that the fold on the leading edge and the glue lines

along the trailing edge did not seal the top and the bottom of the mailer.  Sears Days Final

Agency Decision, at JA 2 ("the placement of the glue lines near the trailing edge did not serve to

secure the top and bottom open edges"); Baby Event Final Agency Decision, at JA126 ("[w]hile

the mailpiece in question was secured by a glue line within one inch of the top edge and another

within one inch of the bottom edge [on the trailing edge], the placement of the glue lines near the

trailing edge did not serve to secure the top and the bottom open edges"); Buick Holiday Event

Final Agency Decision, JA 166 (glue line on the entire trailing edge did not seal the top and

bottom of the mailer).  The problem was not an off-center tab or glue spot; the problem was that

there was essentially *no* seal on the top and the bottom to Plaintiffs' mailers to prevent them

from fanning open.  The Supreme Court instructs lower courts to defer to an agency when its

interpretation is not plainly erroneous or inconsistent with the regulation.  *See Auer*, 519 U.S. at

361.  This Court defers to the Pricing Center's interpretation of its own regulation.

Notably, instead of alleging that they sealed their mailers "on" the top and

bottom, Plaintiffs state that they sealed their mailers "near" the top and bottom.  Pl. Reply at 8.

It is undisputed that the Sears Days and Baby Event mailers were sealed with glue spots on the

trailing edge within 1 inch of the top and bottom and the Buick Holiday Event mailer was sealed

with a continuous glue line along the full length of the trailing edge.  The Pricing Center was

reasonable in finding that sealing along the trailing edge was not the equivalent of sealing the

mailers "on the top and the bottom."  Plaintiffs' mailers could be bent in on the leading and

trailing edges (the right and left) so that the mailpiece could bulge into a circular piece that could

obstruct high-speed equipment.  The Postal Service cited a long-time concern—expressed at the

time of the April, August, and December 2009 mailings at issue—that an open edge of

improperly sealed unenveloped mail could become lodged in high-speed processing equipment.

*See* 73 Fed. Reg. 79430 (Dec. 29, 2008), at PS1705 (self-mailers "tend to double feed and jam resulting in damage to the equipment and the mail" and then must be processed manually or on flat sorting equipment); Guide 201b (May 11, 2009), at PS233 ("Unenveloped letter-sized mailpieces prepared for automation mailings must be secured (tabbed) to prevent an open edge from jamming high-speed processing equipment"). The Pricing Center reasonably interpreted its regulation to effectuate its purpose—that is, the enforcement of the sealing requirement was reasonably related to the need to ensure smooth automated processing (the basis of the low postal rate) and avoid equipment blockages.

Plaintiffs point out that in April 2009 the Postal Service promulgated a new regulation creating "optional recommendations" for folded self-mailers, *see* New Standards for Letter-Size Booklets, 74 Fed. Reg. 17399 (Apr. 15, 2009) (Supp. App. 1714), at PS1714-1718, which permitted sealing by way of a glue spot within ¾ inch of an edge, *id*. at 17402. This point does not help, as Plaintiffs have not demonstrated that their mailers otherwise complied with the "optional recommendations." *See, e.g.*, *id*. at 17401 (mailpieces must be constructed from high tear strength paper stock); *id*. at 17402 (§ 201.3.14.1c, which mandates sealing of the trailing edge as well as the top and bottom, unchanged).

Plaintiffs emphasize that the Postal Service amended its regulations in 2011. *See* DMM §§ 201.3.14.3(b), 201.3.14.4(b), 201.3.14.5(b) (current standards last updated July 13, 2015), at PS140-142. But Plaintiffs were required to comply with the regulations as they existed in 2009, as the legal effect of conduct should be assessed under the law that existed when the conduct took place. "So long as [a] regulation is extant it has the force of law." *United States v. Nixon*, 418 U.S. 683, 695 (1974); *see also Landgraf v. USI Film Products*, 511 U.S. 244, 265-66 (1994) (discussing the presumption against the retroactive applications of legislation).

16

Moreover, subsequent modification of a regulation does not make an earlier rule invalid. Agencies do not adopt regulations that necessarily "last forever" and are supposed to adapt their rules as circumstances change. *Am. Trucking Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.*, 387 U.S. 397, 416 (1967); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983).[6]

Because the Pricing Center engaged in reasoned decision-making, its final agency decisions, including the deficiency assessments, will be affirmed. The Postal Service certified the debt as due and owing and it seeks judgment under the Federal Debt Collection Improvement Act, 31 U.S.C. §§ 3701 *et seq*. and the Fair Debt Collection Procedure Act (FDCPA), 28 U.S.C. § 3001 *et seq*., which together permit the United States to recover a judgment on a debt. *See United States v. Raymond & Whitcomb Co.*, 53 F. Supp. 2d 436, 443 (S.D. N.Y. 1999) (FDCPA permits recovery of unpaid postage). Further, when recovering a debt under FDCPA, the United States is "entitled to recover a surcharge of 10 percent of the amount of the debt in connection with the recovery of the debt, to cover the cost of processing and handling litigation and enforcement." 28 U.S.C. § 3011(a); *see also Consol. Edison Co. of N.Y., Inc. v. Ashcroft*, 286 F.3d 600, 602 (D.C. Cir. 2002) (applying § 3011(a)). Plaintiffs do not contest the amount of the deficiencies or the Postal Service's entitlement to a 10% surcharge on debt recovered. The Court will enter judgment on the debt, together with the surcharge, in favor of the Postal Service.

### B. Count II—Due Process

Count II of the Complaint alleges that the Postal Service "retroactively reinterpreted" § 201.3.14.1c governing self-mailers and, because Plaintiffs lacked the required

---

[6] Plaintiffs have not shown that their mailings actually complied with the 2011 regulations.

notice of what type of sealing the regulation required, their right to notice under the due process clause was violated.  The Postal Service moved for summary judgment on this Count.

### 1. Legal Standard for a Rule 56 Motion

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  The nonmoving party must point out specific facts showing that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324.  In addition, the nonmoving party may not rely solely on allegations or conclusory statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).  Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor.  *Id.* at 675.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

### 2.  The Undisputed Facts Demonstrate Plaintiffs Had Notice

The Fifth Amendment due process clause provides that no person "shall be deprived of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. V.

Procedural due process mandates notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  Plaintiffs' allegation that their due process rights were violated when the Postal Service improperly "retroactively reinterpreted" the self-mailer regulation is grounded on the assertion that they did not have notice of the sealing requirement.

A regulated party receives notice by reading the regulations.  *Howmet Corp. v. EPA*, 614 F.3d 544, 554 (D.C. Cir. 2010).  Further, "published agency guidance may provide fair notice of an agency's interpretation of its own regulations."  *Id.* (quoting *Star Wireless, LLC v. FCC*, 522 F.3d 469, 474 (D.C. Cir. 2008)).  "If, by reviewing the regulations and other public statements issued by the agency, a regulated party would be able to identify, with 'ascertainable certainty,' the standards with which the agency expects parties to conform, then the agency has fairly notified a petitioner of the agency's interpretation."  *General Elec. Co. v. EPA*, 53 F.3d 1324, 1329 (D.C. Cir. 1995).

It is undisputed that DMM § 201.3.14.1c and Quick Service Guide 201b were published and available for review by Plaintiffs.  As explained above, the regulation required that a self-mailer more than 7 inches long had to be sealed along its trailing edge and sealed on the top and bottom.  Plaintiffs could have identified the sealing standards with reasonable certainty by reading the regulation alone.  Plaintiffs could have read the regulation to discern that a glue line along the trailing edge, perpendicular to the top and bottom, did not satisfy the clear requirement that the mailers be sealed on the top and the bottom.  Guide 201b illustrated an acceptable design by showing a bi-fold mailer with three tabs: on the trailing edge, on the top, and on the bottom.  Plaintiffs also could have used Guide 201b to assist them.

Plaintiffs also had actual notice.  A year before the Sears Days mailers were sent by Sears subcontractor Team Services, Team Services sought to send folded self-mailers like the ones at issue here.  A postal employee informed Team Services employee James Helms that a tab needed to be placed in the middle of the top and bottom of the mailpiece.  Postal Service Letter to Team (12/24/2007), at JA104.  Similarly, a Segerdahl Graphics employee by the name of Mike Buttita acknowledged that a mailpiece sealed only along the trailing edge like those here was not sealed properly.  The Final Agency Decision regarding the Buick Holiday Event mailer described Mr. Buttita's admission:

> You state that your mailpiece met the DMM requirements for folded self-mailers with a final fold on the leading edge, because DMM language is not clear in specifying the number of tabs, seals, glue lines required.  In addition, you state that the glue line on the entire trailing edge ultimately satisfy's (sic) the requirements for sealing the left, top and bottom edges.  Your agent, Mike Buttita of Segerdahl Graphics, however, in a January 12, 2010 email to Postal Inspector Palmeri acknowledged that the tabbing on a similar piece, sealed the same way, was incorrect.

Buick Holiday Event Final Agency Decision, at JA 166.  Mr. Buttita withdrew the improperly secured mail and agreed to seal it on the top in the middle, on the bottom in the middle, and with two glue spots at the trailing edge.  Mr. Buttita noted that "[i]t is not a common practice for our quality control processes to allow for such an elementary error."  Buttita Letter to Postal Service (1/12/2010), at JA 180.  Segerdahl Graphics printed and mailed both the Baby Event and the Buick Holiday Event mailings.  Sears, as Segerdahl's principal, is charged with its agent's knowledge.  *Bowen v. Mount Vernon Sav. Bank*, 105 F.2d 796, 799 (D.C. Cir. 1939) ("The reason for the rule which charges a principal with his agent's knowledge is simply the injustice of allowing the principal to avoid, by acting vicariously, burdens to which he would become subject if he were acting for himself.").  Because the record reveals that Plaintiffs had both constructive and actual notice of the sealing requirements for their self-mailers, summary

judgment will be granted in favor of the Postal Service on Plaintiffs' procedural due process claim.[7]

### C.  Count IV—Ultra Vires Claim

Plaintiffs' claim in Count IV of the Complaint that the deficiency assessments are unjust, unreasonable, and *ultra vires* due to the fact that the Postal Service has not shown that the assessments are based on actual damages suffered by the Postal Service.  The Postal Service moves to dismiss Count IV for lack of subject matter jurisdiction.

### 1.  Legal Standard for Rule 12(b)(1) Motion

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint, or any portion thereof, for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is both a statutory requirement and an Article III requirement. *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).  The party claiming subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists.  *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (noting that federal courts are courts of limited jurisdiction and "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction") (internal citations omitted).

---

[7] Plaintiffs do not claim that the regulation was unconstitutionally vague.  To avoid a finding of unconstitutional vagueness, a regulation has to be "reasonably specific and objective." *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 324 (2002); *see also U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 413 U.S. 548, 578-79 (1973) (a regulation that an "ordinary person exercising ordinary common sense can sufficiently understand" is not vague).  DMM § 201.3.14.1c easily meets this standard.

When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court must review the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004). Nevertheless, "theCcourt need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006). A court may consider materials outside the pleadings to determine its jurisdiction. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005); *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003).

### 2.  No Jurisdiction Over Claims Challenging Postal Rates

Plaintiffs allege that the deficiency assessments are unjust, unreasonable, and *ultra vires* because they are unrelated to any actual damage suffered by the Postal Service. Plaintiffs specifically contend that the Postal Service violated: (1) 39 U.S.C. § 404(b), requiring that postal rates be reasonable and equitable; (2) *id*. § 3622(b)(8), requiring that the Postal Regulatory Commission establish just and reasonable postal rates and classifications; and (3) *id*. § 3622(c)(5), requiring that in establishing postal rates, the Postal Regulatory Commission take into account the degree of preparation of mail for delivery into the postal system performed by the mailer and its effect upon reducing costs to the Postal Service. *See also id*. § 403 (the Postal Service shall "provide adequate and efficient postal services at fair and reasonable rates and fees").

By statute, the Postal Regulatory Commission is required to establish a nationwide system for establishing and regulating a schedule of postal rates and classes. *Id*. § 3622(a).  The system is designed to achieve various objectives, such as to create predictability

and stability in rates, to allow pricing flexibility, to reduce administrative burden, and to establish a just and reasonable schedule for rates and classifications. *Id*. § 3622(b). A principal purpose for uniform postal rates is to remove undue price discrimination. *Nat'l Ass'n of Greeting Card Publishers v. U.S. Postal Service*, 462 U.S. 810, 822 (1983). Title 39 also provides that district courts have jurisdiction over cases against the Postal Service, "*except* as otherwise provided in this title." 39 U.S.C. § 409(a). Particularly excepted are claims concerning postal rates and service standards; such claims must first be presented to the Postal Regulatory Commission. *Id*. § 3662. An appeal from a Commission ruling must be taken directly to the D.C. Circuit. *Id*. § 3663. "[A] statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute." *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984). Claims challenging postal rates and service are not within the jurisdiction of the district court. *Erickson v. U.S. Post Office*, 250 Fed. Appx. 757, 758 (8th Cir. 2007); *see also Foster v. Pitney Bowes*, 549 Fed. Appx. 982, 986 (Fed. Cir. 2013); *Reader's Digest Ass'n v. U.S. Postal Service*, 501 F. Supp. 126, 128-29 (D.D.C. 1980).[8]

It is true that there is no record evidence regarding whether the Postal Service suffered damages as a result of the three mailings. However, the Postal Service is not required to prove damages in order to assess a deficiency. The deficiencies assessed are not for the purpose of ameliorating an injury, but were for the payment of postage due and owing because Plaintiffs

---

[8] Plaintiffs mistakenly contend that this Court has jurisdiction to determine whether the Postal Service acted *ultra vires* pursuant to *Aid Ass'n for Lutherans v. U.S. Postal Service*, 321 F.3d 1166, 1172-73 (D.C. Cir. 2003). While the D.C. Circuit in *Lutherans* found that judicial review of a Postal Service action in excess of its authority was not barred by its exemption from APA review, the Circuit did not address the statutory requirement that review must take place before the Postal Regulatory Commission with appeal to the Circuit.

had paid for postage at an incorrect rate.[9]   The rates are set by the Postal Regulatory Commission

to apply uniformly throughout the United States in a stable and predictable manner.  *See* 39

U.S.C. § 3622(a) & (b).  To permit Plaintiffs to pay a discounted rate for which they were not

qualified would discriminate against other mailers who did comply with the regulations, in

contradiction of the principal purpose for uniform postal rates—the removal of undue price

discrimination.  *See Greeting Card Publishers*, 462 U.S. at 822.  Postal rates are not adjusted

retroactively depending on whether the processing of a particular piece of mail was efficient or

based on how much it actually cost to process that particular piece of mail.  *Post hoc* rate setting

would undermine the nationwide uniformity of the rates and would result in a flood of rate

litigation.[10]

> Here, Plaintiffs paid postage on the three mailings at the most-discounted

automation rate, despite the fact that the self-mailers did not comply with the requirements and

thus did not qualify for the low rate.  As a natural result, the Pricing Center determined that

Plaintiffs should have paid postage at the higher standard rate, and it assessed deficiencies.  The

Postal Service certified that Plaintiffs owed the difference between the rate they paid and the

higher rate applicable to the design and sealing of their mailers.  When Plaintiffs claim in Count

IV that they should be charged based on machines that actually jammed (damages the Postal

---

[9] The fact that the Government seeks a deficiency "does not automatically convert a proceeding into an action for a 'penalty.'"  *Johnson v. SEC*, 87 F.3d 484, 487-88 & n.4 (D.C. Cir. 1996).  A sanction that is merely remedial is not a penalty.  *Id*. at 487.

[10] The Supreme Court has rejected claims advocating particularized rates for plaintiffs in other regulated industries with uniform rate systems.  *See Permian Basin Area Rate Cases*, 390 U.S. 747, 769 (1968) ("This Court has repeatedly recognized that legislatures and administrative agencies may calculate rates for a regulated class without first evaluating the separate financial position of each member of the class.");  *Hegeman Farms Corp. v. Baldwin*, 293 U.S. 163, 170-71 (1934) (rejecting milk wholesaler's contention that the rate should be changed for the wholesaler because it was deprived of a profit.)

Service can prove), they are in fact asserting a challenge to postal rates themselves. This Court lacks jurisdiction over postal rate challenges. *See id.* § 3662. Accordingly, Count IV will be dismissed for lack of jurisdiction.

### D. Count V—Due Process

Count V alleges, without more, that "[t]he revenue deficiencies assessed by the Postal Service . . . violate the Due Process Clause of the Fifth Amendment because the revenue deficiencies exceed the amount of the Postal Service's actual costs resulting from non-compliance." Compl. ¶ 95. The Postal Service moves for judgment on the pleadings on Count V because it fails to allege the elements of either a procedural or substantive due process claim— it does not allege lack of notice, lack of opportunity to be heard, or egregious, "conscience shocking" Government conduct. *See Mathews*, 424 U.S. at 333 (to state a procedural due process claim, a plaintiff must allege lack of notice or opportunity to be heard); *Estate of Phillips v. District of Columbia*, 455 F.3d 397, 403 (D.C. Cir. 2006) (to state a substantive due process claim, a plaintiff must allege that a government official was so deliberately indifferent to his constitutional rights that the official's conduct "shocks the conscience").

Plaintiffs failed to respond to the Postal Service's motion with regard to Count V, and thus they are deemed to have conceded it. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd*, 98 Fed. Appx. 8 (D.C. Cir. 2004). Judgment on the pleadings will be entered as to Count V.

**III. CONCLUSION**

Some cases involve sticky issues.  Not this one.  The factual issues are decidedly not sticky enough, as the trouble here was the insufficient use of glue.  The key issue raised is whether Plaintiffs' mail pieces were sealed "on the top and bottom."  They were not.  As explained above, Plaintiffs' motion for summary judgment [Dkt. 21; refiled at Dkt. 47] will be denied and Defendant's cross motion to dismiss and for summary judgment [Dkt. 27; refiled at Dkt. 44] will be granted.  Count III will be dismissed as moot; Count IV will be dismissed for lack of jurisdiction; and judgment on the pleadings will be entered in favor of the Postal Service on Count V.  Further, summary judgment will be entered in favor of the Postal Service as to all other Counts of the Complaint and Counterclaim.  A memorializing Order accompanies this Opinion.


Date: September 30, 2015                              _____/s/_____
                                                     ROSEMARY M. COLLYER
                                                     United States District Judge